Hieronim NOWACZYK, as Liquidator for Fundusz Obslugi Zadluzenia Zagranicznego, Plaintiff,

v.

Dino MATINGAS, and American Business Invest, Inc., American Business Invest 373, Inc., American Business Invest 374, Inc., and American Business Invest 376, Inc., Defendants.

No. 92 C 4898.

United States District Court, N.D. Illinois, E.D.

Feb. 8, 1993.

Terry M. Grimm, Timothy P. O'Connor, Warren von C. Baker, and Darcy J. Bogenrief, Winston & Strawn, Chicago, IL, for plaintiff.

Thomas P. Sullivan, Thomas James McCarthy, Jenner & Block and Nicholas C. Syregelas, Nicholas C. Syregelas & Associates, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court are Defendants' Motion to Dismiss, Motion to Stay Discovery, and Motion for a Protective Order.

## FACTS

Fundusz Obslugi Zadluzenia Zagranicznego ("FOZZ") was established by an act of Polish Parliament in February, 1989 as

an instrumentality of and vested with the authority of the government of Poland to service Poland's foreign debt. FOZZ was placed in liquidation by the Polish Parliament as of December 1990 following the discovery of major improprieties and fraud. Hieronim Nowaczyk, a citizen and resident of Poland, has been appointed Liquidator of FOZZ by the Polish Ministry of Finance and is charged with the task of marshalling FOZZ's assets. In the 1980's the government of Poland suspended all payments on its foreign debt ("Debt"). This Debt was subsequently traded in commerce from time to time in private and secondary transactions often at substantial discounts. FOZZ determined it could reduce Poland's outstanding Debt if the Debt was repurchased on the secondary markets.

ABI is an Illinois corporation with its principal place of business in Chicago, Illinois. ABI was incorporated with minimum capital ($1,000) and with Dino Matingas ("Matingas"), as the sole director. ABI has over twenty subsidiaries or affiliates, which purport to be engaged in the business of obtaining loans and aiding customers in investment transactions.

The plaintiff's Amended Complaint includes three counts. Count I alleges fraud, Count II seeks an accounting, and Count III alleges conversion. Each count involves allegations that defendants engaged in a fraudulent scheme to embezzle or otherwise misappropriate FOZZ funds. The plaintiff alleges that Gregory Zemek ("Zemek"), then director of FOZZ, and defendants diverted FOZZ funds for their personal benefit.

Specifically, plaintiff alleges that Zemek entered into a Letter Agreement dated May 26, 1989 between FOZZ and ABI 368 pursuant to which ABI 368 agreed to repurchase various amounts of the Debt. The Letter Agreement stated that "Fozz and ABI 368, Inc., from time to time and on a case-by-case basis, mutually agree to enter into transactions involving purchases in the secondary market ("Purchases") of external debt of the Polish Peoples Republic (the "Assets")." Plaintiff alleges that pursuant to the Letter Agreement, FOZZ would pro-vide funds owned by the government of Poland to Matingas and his shell corporation, ABI 368, for the sole purpose of purchasing certificates of deposit. These certificates of deposit would then be used as collateral for loans obtained by ABI 368 for the repurchase of the Debt.

Plaintiff alleges that defendants never at any time acquired or intended to acquire the Debt as they had represented to FOZZ; rather, they conspired to and did misappropriate and convert at least $15.5 million of FOZZ funds for their own personal, unlawful gain. Plaintiff contends that defendants converted the funds to pay off past loans and refinance property, uses not beneficial to nor authorized by FOZZ.

## I. MOTION TO DISMISS

Defendants have moved for dismissal of Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted. Federal Rule of Civil Procedure 12(b)(6). Therefore, the court "must accept as true all the plaintiff's well-pleaded factual allegations and inferences reasonably drawn from them." *Swofford v. Mandrell*, 969 F.2d 547, 549 (7th Cir.1992). An action may be dismissed only if the complaining party "can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

Primarily, defendants challenge the sufficiency of plaintiff's fraud claim as stated in Count I of Plaintiff's Amended Complaint. Furthermore, defendants argue that since the fraud claim in Count I forms the basis for Count II seeking an accounting and Count III alleging conversion, plaintiff's complaint should be dismissed in its entirety. To state a claim for fraud under Illinois law, plaintiff must plead and prove:

(1) A false statement of material fact; (2) by a party who knows or believes it to be false; (3) with the intent to induce another to act; (4) action by the other in reliance of the statement's truth; and (5) injury to the other resulting from that reliance. *In addition, the injured party*

*must have been justified in relying on the other's statement.* Runnemede Owners, Inc. v. Crest Mortg. Corp., 861 F.2d 1053, 1056 (7th Cir.1988) (emphasis in original).

The defendants challenge two elements of plaintiff's fraud claim. First, the defendants dispute plaintiff's claim that the ABI Defendants made a false statement of material fact by promising to purchase Polish Debt in the secondary market under the Letter Agreement since they had no intention of purchasing such debt. Amended Complaint, at ¶ 19. Defendants argue that they were not obligated under the Letter Agreement to purchase Polish Debt with the funds transferred by FOZZ and therefore the plaintiff has failed to allege any conduct contrary to the defendants' contractual obligations under the Letter Agreement. Memorandum in Support of Defendants' Motion to Dismiss Amended Complaint ("Defendants' Memo in Support"), at 7. Second, defendants contend that even if the alleged promise constituted a false statement of material fact, the plaintiff could not have justifiably relied on the alleged misrepresentations, which purportedly induced FOZZ to transfer funds to the ABI defendants, because such misrepresentations were contrary to the express provisions of the governing Letter Agreement. *Id.* at 8.

### 1. *False Statement of Material Fact*

FOZZ and ABI 368, Inc. executed a Letter Agreement whereby they agreed "to enter into transactions involving purchases in the secondary market ... of external debt of the Polish People's Republic...." Amended Complaint, Ex. A, at 1. In furtherance of this agreement, FOZZ agreed to transfer an unspecified amount of money to ABI 368 for the purchase of interest-bearing certificates of deposit to be held by ABI 368 for the benefit of FOZZ. *Id.* at

¶ 1. The Letter Agreement authorized ABI 368 "to encumber these certificates of deposit by pledging them as security for any loans obtained by ABI 368" and provided that "[t]he proceeds of any such loans shall be available to ABI 368 at ABI 368's *sole discretion." Id.* (emphasis added). Further, the Letter Agreement states that FOZZ would give ABI 368 written notice of FOZZ's desire to purchase Polish Debt, and within thirty days of receiving notice, ABI 368 would enter negotiations with third parties owning the assets to be purchased. *Id.* at ¶ 2. Finally, the Letter Agreement stated that the "ultimate decision to purchase these assets will be made jointly by FOZZ and ABI 368." *Id.*

The plaintiff claims that the ABI defendants' promise in the Letter Agreement to purchase Polish Debt was a false statement because the defendants had no intention of purchasing and never did purchase such Debt. *Id.* at ¶ 19. Plaintiff also alleges that defendant Matingas made a false statement in a letter to Zemek dated July 3, 1989 that pursuant to the Agreement, ABI would use the proceeds of certain certificates of deposit purchased with FOZZ funds, "to start purchasing Polish Peoples Republic Foreign Debt." *Id.* at ¶ 16, Ex. B. Plaintiff also alleges that defendant Matingas made another false statement in a letter to Zemek dated March 2, 1990, in which Matingas reported that ABI 368 "is holding debt of the People's Republic of Poland covered by the debt deferral and reference agreement ("DDRA") in the face amount of Thirty–Three Million U.S. Dollars ($33,000,000)."[1] *Id.* at ¶ 17, Ex. C.

The defendants argue, however, that they were not obligated under the Letter Agreement to purchase Polish Debt with the funds transferred by FOZZ and any subsequent communication to FOZZ was explicitly subject to the Letter Agreement. Defendants' Memo in Support, at 7. Ac-

---

**1.** In a letter dated May 31, 1992, Matingas maintains that he hand-delivered a "corrected" letter of March 2, 1990 to Zemek, along with a cover letter dated May 30, 1990, explaining the mistake. The "corrected" March 2, 1990 letter indicates that ABI 368 "could be" holding $33 million in face value of the Debt, instead of "is" holding, which was the language used in the original letter. Amended Complaint, at ¶ 21, Ex. F. Plaintiff alleges that this corrected letter was fabricated long after the date it bears, backdated and transmitted to the Liquidator in furtherance of defendants' fraudulent scheme. *Id.* at ¶ 22.

cording to defendants, they were not authorized to purchase Polish Debt until FOZZ gave the ABI defendants 30 days written notice of its desire to purchase such Debt. Amended Complaint, Ex. A, at ¶ 2. Therefore, if they had attempted to use FOZZ funds to purchase foreign debt in the manner now urged by the plaintiff, defendants maintain, they would have violated the Letter Agreement. Defendants' Memo in Support, at 7. Furthermore, defendants argue that nothing in the Letter Agreement restricted the use of the proceeds from the certificates of deposit purchased with FOZZ funds or prohibited the ABI Defendants from using such proceeds for their personal gain.

The plaintiff maintains that defendants did promise to purchase Polish Debt in the Letter Agreement. The first paragraph of the Letter Agreement sets forth its purpose:

> Fozz and ABI 368, Inc., from time to time and on a case-by-case basis, mutually agree to enter into transactions involving purchases in the secondary market ("Purchases") of external debt of the Polish People's Republic (the "Assets"). Under such purchases, ABI will sell to Fozz and Fozz will buy from ABI 368 all rights and interest in and to the subject assets, such sales to take place on the agreed-upon closing date and for the agreed-upon purchase price. . . . .
>
> In furtherance of the above-described arrangement, the parties have agreed to the following:
>
> &ast; &ast; &ast; &ast; &ast; &ast;

Amended Complaint, Ex. A, at 1. The plaintiff argues that this sole statement of purpose, which introduces the specific provisions defendants cite, shows that the funds transferred under the Letter Agreement were to be used solely to purchase Polish Foreign Debt. This interpretation is reasonable, plaintiff asserts, because the funds provided under the Letter Agreement were comprised entirely of the tax dollars of the people of Poland. Plaintiff's Response in Opposition to Defendants' Motion to Dismiss the Amended Complaint ("Plaintiff's Response"), at 4. Finally,

plaintiff argues that since the amended complaint more than adequately alleges a claim for fraud, plaintiff's claims for an accounting and for conversion should also survive the motion to dismiss. *Id.* at 11.

■ Whether the plaintiff's complaint states a claim on which relief can be granted depends on whether plaintiff's interpretation of the Letter Agreement is reasonable. When the court interprets the meaning of a contract, the rights and obligations of the parties cannot be determined solely by reference to an isolated provision in a contract; rather, the agreement must be read in its entirety. *Martindell v. Lake Shore National Bank*, 15 Ill.2d 272, 283, 154 N.E.2d 683, 690 (1958). Defendants cite this principle in support of their motion to dismiss. Reply Memorandum in Support of ABI Defendants' Motion to Dismiss ("Defendants' Reply"), at 4–5. This principle, however, warrants denial of defendants' motion to dismiss. The introductory paragraph of the Letter Agreement, which states the overall purpose for the contract, must be read together with the provisions to which the defendants refer.

■ As Defendants point out, the law does not recognize fraud based on misrepresentations inconsistent with the terms of the parties' express written agreement. *Runnemede Owners, Inc. v. Crest Mortg. Corp.*, 861 F.2d 1053, 1059 (7th Cir.1988). According to plaintiff's interpretation of the Letter Agreement, however, its fraud claim is consistent with and based in part on the written agreement. According to plaintiff, defendants' agreement to purchase the external debt of the Polish People's Republic in the secondary market belies their contention that they had unrestricted use of the funds. Thus, taking plaintiff's allegations as true, the court finds that the plaintiff has stated a claim that defendants made a false statement of material fact.

2. *Justifiable Reliance on Misrepresentations*

■ In the alternative, defendants argue that if false statements were made, plaintiff cannot have justifiably relied on the

truth of the statements because they were contrary to the express provisions in the Letter Agreement. To state a claim for fraud, the plaintiff must establish reasonable and justifiable reliance on defendants' misrepresentations. *Runnemede Owners*, 861 F.2d at 1056. Pursuant to Illinois law, one who closes ones eyes in the face of known risks cannot claim to be the victim of intentional fraud. *AMPAT/Midwest, Inc. v. Illinois Tool Works, Inc.*, 896 F.2d 1035, 1041–42 (7th Cir.1990).

■ Plaintiff has alleged facts sufficient to support an inference of reasonable reliance on defendants' misrepresentations insofar as the alleged misrepresentations induced FOZZ to transfer funds to the ABI defendants. The fact that a "more cautious [party] might not have relied, might have smelled a rat, does not defeat liability." *Id.* at 1041. The "victim of a deliberate fraud is barred only if he has notice of the fraud, and so he need only avoid *deliberate* or *reckless* risktaking." *Id.* at 1041–42. The plaintiff justifiably relied on the alleged misrepresentations since, according to plaintiff's interpretation of the Letter Agreement, defendants' statements were consistent with the agreement. Furthermore, plaintiff may have justifiably relied on defendant Matingas' further assurances that the ABI defendants planned to purchase and did purchase external Debt of the Polish People's Republic. Amended Complaint, at ¶¶ 21–22.

Since the plaintiff has stated a claim for fraud upon which relief can be granted, the court denies the defendants' motion to dismiss as to Count I. Furthermore, because defendants' motion to dismiss the remaining counts is based on the premise that Count I fails to state a claim, the court also denies defendants' motion to dismiss as to Counts II and III.

## II. MOTION TO STAY DISCOVERY

■ A stay of civil discovery is sometimes appropriate to protect competing interests arising from parallel civil and criminal proceedings involving the same subject matter. *See Federal Insurance Company v. Tabb*, 1991 WL 113204, *1, 1991 U.S.Dist. LEXIS 7935, *1 (N.D.Ill. June 7, 1991). *See also White v. Mapco Gas Products, Inc.*, 116 F.R.D. 498, 501–503 (E.D.Ark.1987); *Brock v. Tolkow*, 109 F.R.D. 116, 119 (E.D.N.Y.1985) (staying discovery in civil action pending resolution of federal racketeering investigation of certain common defendants). The court must weigh five competing interests:

> (1) The interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) The burden which any particular aspect of the proceedings may impose on defendants; (3) The convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) The interests of persons not parties to the civil litigation; and (5) The interest of the public in pending civil and criminal litigation.

*White*, 116 F.R.D. at 502.

Defendants argue that discovery should be stayed because there are criminal investigations underway in Poland and the United States concerning the same matters at issue in this civil case. In support of its position, defendants contend that the criminal investigation will undermine the defendants' ability to obtain discovery and compromise their ability to assert and establish their defenses in this case. The court must consider the five factors set forth above to determine whether a stay of discovery is warranted.

### 1. *Interest of Plaintiff*

■ The defendants argue that the court's consideration of the plaintiff's interest should be tempered by two factors. First, defendants claim that the plaintiff's amended complaint barely, if at all, states a claim against the ABI defendants. Second, defendants assert that the plaintiff has brought this civil action to discover information under the Federal Rules of Civil Procedure not otherwise obtainable under the applicable rules of criminal procedure in Poland and the United States. Defendants contend that this civil case could have been settled had prosecutorial author-

ities not interfered. Memorandum in Support of Defendants' Motion to Stay Civil Discovery ("Defendants' Memo in Support"), at 6–7.

The defendants' arguments, however, are without merit. First, the court believes the plaintiff's amended complaint sufficiently states a claim as evidenced by the court's decision to deny defendants' motion to dismiss. Second, although the defendants allege some facts to support the inference that the plaintiff seeks to obtain information from this civil lawsuit not otherwise accessible to prosecuting authorities, the court is convinced that obtaining information for a criminal prosecution is not plaintiff's sole impetus for bringing suit. More importantly, entry of a stay of discovery could severely harm the plaintiff since a delay would increase the chances that defendants will dissipate FOZZ's funds and ultimately prove unanswerable in damages.

### 2. *Burden on Defendants*

■ The defendants argue that they will be burdened by the simultaneous criminal investigation because intensive civil discovery will divert limited resources necessary for defense of a possible criminal action. *See White*, 116 F.R.D. at 502. Furthermore, defendants argue that they will be burdened by having to employ the cumbersome and restrictive letters rogatory process authorized in 28 U.S.C. § 1781 in order to obtain third-party discovery in Poland. Defendants further argue that simultaneous prosecution of their civil case will "place Matingas and the persons who work with the ABI companies in the untenable position of choosing between defending against this groundless lawsuit or invoking their privilege against self-incrimination." Defendants' Memo in Support, at 11.

The court finds these arguments devoid of merit. First, although defendants' resources may be diverted by having to defend two lawsuits simultaneously, this burden is outweighed by the risk to the plaintiff that defendants will dissipate FOZZ's funds. Second, the cumbersome procedure of letters rogatory required for international discovery cannot warrant delay. That process will be required regardless of when the instant lawsuit proceeds.[2] Finally, defendant Matingas may assert his Fifth Amendment right against self-incrimination in this civil action if his answers might tend to subject him to criminal liability.[3] *McCarthy v. Arndstein*, 266 U.S. 34, 40, 45 S.Ct. 16, 17, 69 L.Ed. 158 (1924). Since corporations do not possess the Fifth Amendment privilege against self-incrimination and the privilege does not extend to employees, this argument is irrelevant with respect to the other ABI defendants. *United States v. Kordel*, 397 U.S. 1, 7–8 and n. 9, 90 S.Ct. 763, 766–767 and n. 9, 25 L.Ed.2d 1 (1970).

### 3. *Burden on the Court*

■ As the defendants recognize, the court has an interest in moving the cases on its docket to an expeditious conclusion. Nonetheless, defendants argue that resolution of the related criminal matter may eliminate much of the court's work in the civil action. *White*, 116 F.R.D. at 502. For example, defendants argue that the criminal case will establish that no improprieties occurred because the Government of Poland approved FOZZ's activities. Defendants' Memo in Support, at 13. Defendants' argument is undercut by their own contention that discovery is broader and the standard of proof is less stringent in a civil case than in a criminal proceeding. Therefore, an acquittal in a parallel criminal proceeding does not rule out a finding of liability in a civil suit. Furthermore, as defendants point out, formal criminal proceedings have not commenced against any of the defendants. ABI Defendants' Reply

---

**2.** Defendants' assertion that the Polish government is attempting to circumvent this very process of letters rogatory is misplaced. It is irrelevant with respect to the burden on the defendants of denial of a stay of civil discovery.

**3.** Nonetheless, defendant Matingas may be prejudiced by the adverse inference the trier of fact may permissibly draw from silence if Matingas invokes his Fifth Amendment privilege against self-incrimination. The court considers this issue further in section III.

in Support of Motion for Protective Order, at 13. Thus, it is uncertain how long the requested stay of discovery would persist. *See United States v. Parcel of Realty,* 1988 WL 107346 1988 U.S.Dist. LEXIS 11429 (N.D.Ill. October 7, 1988) (citing *United States v. Banco Cafetero International,* 107 F.R.D. 361, 364 (S.D.N.Y.1985) (court denied government request for stay to continue until resolution of a pending criminal investigation in which an indictment had not been filed)). *See also S.E.C. v. Dresser Indus., Inc.,* 628 F.2d 1368, 1376 (D.C.Cir.1980) (where no indictment has issued, the purpose of staying civil proceedings during pending criminal proceedings is "a far weaker one") (en banc), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980).

#### 4. *Burden on Third Parties*

■ Defendants contend that the employees of ABI will suffer undue hardship in responding to compound criminal investigations and plaintiff's civil discovery requests, while at the same time attempting to maintain the business of the ABI companies. Defendants' Memo in Support, at 13. Nonetheless, the court agrees with the plaintiff that the potential burden to non-parties falls most heavily on the government and citizens of Poland, who stand to lose tens of millions of dollars fraudulently obtained from FOZZ according to plaintiff's allegations. Plaintiff's Response in Opposition to Defendants' Motion to Stay Civil Discovery, at 14.

#### 5. *Interests of the Public*

■ The court finds that consideration of public interest weighs in favor of the government and citizenry of Poland, who desire to recover their funds. Defendants argue that the public interest weighs in favor of a stay to preserve the separate rules and policies underlying civil discovery and criminal investigations. The court agrees that civil cases should not be used as a vehicle to obtain discovery unavailable in parallel criminal proceedings. Nonetheless, entry of a stay is not appropriate where, as here, the civil action is not mere subterfuge and alternative protections will suffice.

Upon balancing the five competing interests set forth in *White,* the court denies the Defendants' Motion to Stay Discovery.

### III. MOTION FOR A PROTECTIVE ORDER

■ "As a general proposition, pretrial discovery must take place in the public unless compelling reasons exist for denying public access to the proceedings." *American Telephone and Telegraph Company v. Grady,* 594 F.2d 594, 596 (7th Cir.1978), *cert. denied,* 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979). Federal Rule of Civil Procedure 26(c) authorizes a court to issue a protective order where justice so requires and "for good cause shown." The party seeking a protective order bears the burden of demonstrating "good cause" and must show a "particular need" for protection. *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir.1986), *cert. denied,* 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule." *Id.* (citing *United States v. Garrett,* 571 F.2d 1323, 1326 n. 3 (5th Cir.1978)).

The defendants contend that a protective order is necessary "to prevent the plaintiff from converting this civil case into a vehicle for conducting broad discovery not otherwise available in connection with an ongoing criminal investigation in Poland and the United States." ABI Defendants' Reply in Support of Motion for Protective Order ("Defendants' Reply"), at 1. In support of this contention, the defendants argue that the District Attorney of Warsaw prohibited plaintiff from entering into a proposed settlement which the plaintiff had expressed willingness to accept. *Id.* at 5. The defendants also argue that the Warsaw District Attorney has "demanded" access to materials plaintiff obtains through discovery in this civil action. *Id.* at 5–6. Furthermore, the FBI has contacted plaintiff's counsel "to aid in their investigation into the involvement of Dino Matingas and related entities in the activities of FOZZ."

Plaintiff's Response to Motion for Protective Order, at ¶ 5.

Specifically, the defendants claim that the plaintiff should not be permitted to file a civil lawsuit to circumvent the more narrow rules of criminal discovery for three reasons. First, defendants argue that this lawsuit will subject them to the time, expense and burden of defending a major civil lawsuit which has no life apart from its role as an investigative tool. According to the plaintiff's complaint, the defendants "conspired to and in fact did misappropriate and convert at least $15.5 million of FOZZ funds for their own personal, unlawful gain." Amended Complaint, at ¶ 13. Acquiring information may be among the plaintiff's goals in pursuing this civil case, but the court is convinced that it does not constitute plaintiff's sole purpose. Thus, the court has denied defendants' motion to dismiss for failure to state a claim.

Second, defendants argue that they will be unable to protect their Fifth Amendment rights against self-incrimination unless the court enters a protective order. Defendants' Reply, at 7. However, as stated above, the Fifth Amendment privilege against self-incrimination "applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it." *McCarthy v. Arndstein*, 266 U.S. 34, 40, 45 S.Ct. 16, 17, 69 L.Ed. 158 (1924). Therefore, if Matingas believes at any point in the course of this litigation that he might incriminate himself by answering any inquiry from plaintiff, Matingas may assert his Fifth Amendment privilege and avoid self-incrimination.[4] Nonetheless, if a party in a civil action invokes his or her Fifth Amendment privilege against self-incrimination, the trier of fact may draw an adverse inference from the party's silence without violating the Fifth Amendment as long as other evidence also supports liabili-

ty. *Federal Insurance Company v. Tabb*, 1991 WL 113204, *1, 1991 U.S.Dist. LEXIS 7935, *1 (N.D.Ill. June 7, 1991). Although denying the protective order would not violate defendant Matingas' constitutional rights, it may have other prejudicial consequences such as the adverse inference drawn from silence in the civil action and other clues that may be gleaned from defendants' silence for use in any ensuing criminal action. *See id.*

Third, defendants argue that without a protective order, they will be denied the opportunity to challenge improper or overreaching requests for materials or information before an objective judicial authority. Defendants' Reply, at 7. Defendants argue that, in the absence of their proposed protective order, prosecutors in Poland will be able to gather criminal evidence in this country without following the procedures set forth in 28 U.S.C. § 1782, which governs letters rogatory. *Id.* at 10–13. Defendants cite prerequisites, designed to protect substantive rights, that parties must satisfy before a letter rogatory request must be honored. For example, federal law authorizes the district court to order the giving of testimony or production of documents pursuant to letter rogatory "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782. Thus, the statute does not authorize taking discovery in connection with a future foreign proceeding that is merely "probable"; rather, the adjudicative proceedings must be "imminent—very likely to occur and very soon to occur." *In re International Judicial Assistance for Federative Republic of Brazil*, 936 F.2d 702, 706 (2d Cir. 1991). In the instant case, the ABI Defendants are not aware of any adjudicative proceeding pending in Poland, where Zemek has been incarcerated without trial for over a year. Defendants' Reply, at 13.[5]

---

4. The court agrees with plaintiff's assertion that defendants' collective reference to "their right against self-incrimination" misstates the scope of the Fifth Amendment. Corporate entities, such as the ABI companies here, have no privilege against self-incrimination and cannot assert the individual privilege against self-incrimination held by their employees. *United States v.*

*Kordel*, 397 U.S. 1, 7–8 & n. 9, 90 S.Ct. 763, 766–767 & n. 9, 25 L.Ed.2d 1 (1970). Therefore, only defendant Matingas' Fifth Amendment privilege against self-incrimination is at issue.

5. The ABI Defendants concede that the D.C. Circuit Court of Appeals has held the "proceeding" requirement of Section 1782 is satisfied if

178

The court agrees that the ABI Defendants have a right to insist that Polish prosecutors fulfill the requirements of United States law to obtain discovery in the United States in connection with the prosecutors' criminal investigation.

In *Campbell v. Eastland,* 307 F.2d 478 (5th Cir.1962), *cert. denied,* 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502 (1963), the court stated that in determining good cause for a protective order, "the trial judge in the civil proceeding should not ignore the effect discovery would have on a criminal proceeding that is pending...." *Id.* at 487. Furthermore, the court stated that "[a] litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restriction on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit." *Id.* In *Campbell,* the plaintiffs instituted a civil suit to discover IRS reports not otherwise obtainable in an imminent criminal suit against them for tax fraud. The defendant requested that discovery be postponed. The trial judge held that the suit for refund was a bona fide suit, and as such, it was completely "independent" of the criminal case. *Id.* at 488. The Fifth Circuit, however, stated that whether or not the suit was bona fide, the effect of granting the motion to give pre-trial discovery of documents inaccessible to the taxpayer in the criminal case nullified the effect of the applicable criminal discovery rules. *Id.* The *Campbell* court reasoned that to rule otherwise would create "an open invitation to [parties] under criminal investigation to subvert the civil rules into a device for obtaining pre-trial discovery against the Government in criminal proceedings." *Id. See also Wilk v. American Medical Association,* 635 F.2d 1295 (7th Cir.1981) (citing *Campbell v. Eastland* for the principle that federal civil discovery may not be used merely to subvert limitations on discovery

in another proceeding); *United States v. American Radiator & Standard Sanitary Corp.,* 388 F.2d 201, 204–205 (3d Cir.1967), *cert. denied,* 390 U.S. 922, 88 S.Ct. 857, 19 L.Ed.2d 983 (1968) (protective order is appropriate relief where plaintiff's discovery seriously interferes with the defense of a criminal action).

■ This court has discretion to impose a protective order "when the interests of justice seem to require such action." *Federal Insurance Company v. Tabb,* 1991 WL 113204, *1, 1991 U.S.Dist. LEXIS 7935, *2 (N.D.Ill. June 7, 1991) (citing *Afro-Lecon, Inc. v. United States,* 820 F.2d 1198, 1202 (Fed.Cir.1987)). The court finds that the defendants' protective order best balances the interests of each of the parties as well as non-parties. First, the plaintiff will not be prejudiced since he will still obtain the full scope of discovery to which he is entitled insofar as the order merely restricts disclosure to third parties. Second, the protective order will reserve defendants' right to object to improper discovery requests in any ensuing criminal actions. Furthermore, it will protect defendant Matingas from prejudicial consequences, albeit not violative of his constitutional rights, involving his decision whether to invoke his Fifth Amendment privilege in this civil action. Third, non-parties, including the governments of Poland and the United States, may still obtain the information protected by this order to which they are entitled; however, they must do so according to the appropriate rules of criminal procedure.

Plaintiff states that he "cannot and will not agree to a protective order that prohibits [his] compliance with authorized requests for information made on behalf of valid governmental authorities." Plaintiff's Response, at ¶ 6. The District Attorney of the Government of Poland has, pursuant to Article 189 of Poland's Code of Criminal Procedure,[6] instructed plaintiff

---

an adjudicative proceeding is merely "within reasonable contemplation." *In re Letter of Request from Crown Prosecution Service,* 870 F.2d 686, 692 (D.C.Cir.1989). There is no authority in the Seventh Circuit on this issue.

6. Article 189 of the Code of Criminal Procedure, translated from Polish, states that "[m]aterials which may serve as evidence in a proceeding must be delivered on the demand of the Court or the prokurator [= the district attorney]." Plaintiff's Response, Ex. B.

"to deliver to the Voivodship Prokurator's Office in Warsaw all of the documentation reflecting the activities of the Fund, [and] also documentation obtained in the course of the liquidation process...." Plaintiff's Response, Ex.B. This court does not preclude plaintiff's compliance with the lawful order of the Warsaw District Attorney. Nonetheless, the plaintiff has chosen to bring this civil action in the United States District Court for the Northern District of Illinois and is bound by the authority of this court with respect to matters relating specifically to this action.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Amended Complaint is denied. Similarly, Defendants' Motion to Stay Civil Discovery is denied. The court grants Defendants' Motion for Protective Order.